Defendants, Acme Tire and Rubber Company, Inc., and its insurer, The Travelers Indemnity Company, appealed from judgment that condemned them in solido to pay plaintiff the amount of damages done his truck in a collision between it and the pickup Dodge truck of the first named defendant, which occurred on May 20, 1946, in the day time on Highway No. 84, a few miles east of Winnfield, Louisiana. Plaintiff's truck with attached trailer heavily loaded with saw logs was traveling westerly. The other truck was going easterly. The collision occurred approximately forty feet west of a bridge of width the same as the black topped portion of the road, or eighteen feet.
Plaintiff alleged and contends that his truck, then driven by his agent, O. D. Powell, was going at a reasonable rate of speed and maintained its side of the road while on the bridge and thereafter; and that the driver of the Dodge truck carelessly and negligently veered from his proper side of the road, rammed plaintiff's truck on the front portion of its left end, from the impact of which the suit for damages arose.
Defendant alleged that plaintiff's truck, going at excessive speed under the prevailing conditions and circumstances, left its side of the highway and sideswiped the Dodge truck; that plaintiff's driver, Powell, did not have his vehicle under proper control. In the alternative, defendants specially plead contributory negligence of plaintiff's driver and base the plea upon the acts of negligence accredited to him in the answer.
In addition to the damages to his truck, plaintiff prayed for judgment for an amount covering the loss of its use between the time of accident to date the vehicle was restored to running condition. The lower court rejected this latter claim.
Plaintiff, in this court, has not prayed for any amendment of the judgment, but, on the contrary, asks for its affirmance.
The answer of the defendants, together with the allegations of the petition, tenders the primary question of the exact location of the two trucks with respect to the center of the road when the contact between them occurred.
The Dodge truck was being driven by a Negro employee named Cicero Hatten. He was accompanied by O. H. Naylor, then president of the Acme Tire and Rubber *Page 164 
Company, Inc., but who has since disposed of his stock therein and is not now connected therewith. As a witness, Naylor testified that the surface of the road was slippery from light rain then falling; that the other truck was observed by him when about one thousand feet away; that the Negro driver, in view of the narrow bridge ahead of them, gradually reduced his speed to about five miles per hour to allow the heavily loaded truck coming, at a speed of thirty miles per hour, to first pass over it; that the right wheels of the Dodge truck were eight inches north of the medial line of the black top surfacing when the collision occurred, and that if plaintiff's truck had held to its side of the road or had been driven upon the shoulder, as contended, the collision would not have happened. However, he admits he did not inspect the locus immediately after the accident nor since, to ascertain if plaintiff's truck, after crossing the bridge, to any extent left the road just prior to the collision.
Hatten, the Negro driver, at time of trial, was, from sudden illness, not physically able to attend court. It was stipulated that if he were present and testified, his version of the facts of the case would substantially agree with that given by Naylor.
There were no other eyewitnesses to the accident save plaintiff's driver. He testified that as his vehicle entered upon the bridge he pulled it to its "extreme right" side, reduced its speed to twenty or twenty-five miles per hour, and when its front end was some forty feet from the bridge the Dodge car, coming at about the same speed, partially on its wrong side of the road, ran into plaintiff's truck. This driver says that as he cleared the bridge he "neared the shoulder". He did not testify that in an effort to avoid the collision he pulled the left portion of his vehicle off of the black topping, but as we shall hereinafter discuss, he evidently did this. His truck and trailer, from the force of the impact, veered to their left, quit the road, and the front end of the truck finally rested in a deep barrow pit full of water. The Dodge truck stopped at the locus of the impact with its front end practically above the road's center and with its rear end pointing northerly.
Eddie Hobbs, an employee of plaintiff, and driver of one of his log trucks, arrived with a load of logs on the scene of the accident not over ten minutes after it happened. He found an unbroken line of tracks from near the west end of the bridge to the rear end of the trailer after it rested. A state trooper who viewed the scene five days subsequent to the accident, found the same tracks about which Hobbs testified. Other witnesses observed the location and route of these tracks and corroborated the testimony of the trooper and Hobbs with respect thereto. As the logs on the trailer weighed approximately fifteen thousand pounds and the shoulder being then wet from rain, we would expect to see very definite tracks of the truck and trailer on the road's shoulder and adjoining ground not only immediately after the accident but for some time thereafter.
It is extremely difficult to understand why this accident happened. Each driver saw the other when one thousand feet apart. It was day time. Both vehicles were going at a reasonable rate of speed and it is not shown nor intimated in the testimony that from said speed either driver lost control of his vehicle.
The testimony of the two drivers is wholly irreconcilable. The trial judge evidently reached the conclusion that defendant's truck encroached upon plaintiff's side of the road just as he was endeavoring to go upon the bridge and in doing this he must have attached considerable importance to the testimony concerning the location and the route of the tracks accredited to plaintiff's vehicle. This physical evidence, he doubtless thought, was sufficient to bring about a preponderance in the evidence for plaintiff; and, in this conclusion, we are not prepared to disagree. Truly, it may appropriately be said that no manifest error appears in the judgment from which defendants appeal. For the reasons herein assigned, the judgment is affirmed with costs. *Page 165